## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | **No. 05-123-12** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **WILLIAM MARTINEZ** | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                 **JULY 27, 2006**

Defendant William Martinez ("Martinez") was among eighteen defendants indicted for their involvement in a heroin ring based in Allentown, Pennsylvania.  In its thirty-eight months of existence, the ring distributed in excess of thirty kilograms of heroin and generated nearly four million dollars in profits.  From November through December of 2004, Martinez participated in the organization as a street dealer.  During this period, the ring distributed approximately one kilogram of heroin—the equivalent of around 20,000 ten-dollar bags—each month.

Martinez was charged with one count of conspiracy to distribute over one kilogram of heroin, a violation of 21 U.S.C. sections 846, 841(a)(1) and 841 (b)(1)(A).  He entered an initial plea of not guilty and was appointed counsel.  On February 10, 2006, Martinez entered a guilty plea subject to a plea agreement.  Prior to accepting his change of plea, the Court conducted a full and complete colloquy with Martinez and his counsel in order to verify that Martinez's plea was entered voluntarily and with his full understanding of his rights.[1]  Under oath, Martinez acknowledged that he understood his right to be represented by appointed counsel, and expressed his satisfaction with the representation he had received.[2]  Martinez stated that he had reviewed with his attorney the

---

[1] Tr. of Change of Plea at 7-33.

[2] Id. at 8.

charge against him in the indictment, and that he understood the charge and its essential elements.[3]
Martinez affirmed that he had read and reviewed the plea agreement with counsel before signing
it, and that he fully understood and agreed to its terms.[4]  The Court explained to Martinez that he
was giving up his trial rights and, according to the terms of his plea agreement, his rights to appeal
his conviction and sentence except in the limited circumstances listed in his plea agreement, which
were repeated by the Court on the record.[5]  Martinez acknowledged that he understood he was
relinquishing these rights.[6]  He also stated that he understood that he was not guaranteed a particular
sentence, and that he was facing a mandatory minimum sentence of twenty years imprisonment and
a maximum sentence of life imprisonment.[7]  Martinez admitted that he was guilty of the crime he
was charged with, and that he had committed all of the acts which comprised the elements of that
crime.[8]  He affirmed that he was pleading guilty voluntarily, that no plea agreement had been
entered into other than the one disclosed on the record, and that no promises or inducements other
than those in the plea agreement had been made to induce his plea.[9]  Finding that he was competent
and capable of entering an informed plea, and further, that he was fully aware his rights, the charges
against him, and the penalties he faced, the Court accepted Martinez's guilty plea.

---

[3] Id. at 9.

[4] Id. at 14-15.  Notably, the plea agreement provided that, for the purposes of seeking an enhanced statutory minimum sentence under 21 U.S.C. § 851(a) (2000), the government would exclude one of Martinez's two qualifying prior drug-related convictions from its amended information.  Id. at 9-14.  As promised, the government filed an amended information excluding one conviction.  Nonetheless, this provision would be the genesis of several of the arguments Martinez later raised.

[5] Id. at 19-21.

[6] Id. at 15-21.

[7] Id. at 21-22, 25-26.

[8] Id. at 27-28.

[9] Id. at 15, 30-31.

The Court received a letter from Martinez, dated June 8, 2006, which expressed his dissatisfaction with his appointed counsel, Carina Laguzzi ("Laguzzi").[10]  In this letter, Martinez asserted that he pleaded guilty on the promise that the government would file an amended information seeking no enhancement to the statutory minimum sentence based on his prior drug convictions.  Martinez asserted that the government, with the assistance of Laguzzi, had reneged on this promise.  Martinez requested that new counsel to be appointed and, without elaborating, that his guilty plea be withdrawn.  Martinez's letter was docketed and circulated to counsel.[11]

The Court promptly held a hearing on Martinez's requests.  On the basis of the evidence presented, the Court concluded that there was an insufficient basis for appointing new counsel.[12]  Despite intimating that he intended to withdraw his guilty plea, Martinez did not attempt to withdraw his guilty plea at the hearing.  However, when the Court inquired concerning his intention to, Martinez responded that he wished to withdraw his guilty plea.[13]  After determining that Martinez sought to withdraw his plea only because he believed he was promised an additional reduction in his potential sentence, the Court denied this motion as well.

The Court did not err in denying Martinez's motion for the appointment of new counsel.  Laguzzi's account of her communications with Martinez, which the Court finds credible, suggests that while she did promise to advocate strongly for a downward departure pursuant to

---

[10] Four months earlier, Martinez had sought to remove his first court-appointed attorney, complaining that he had been visited by counsel only once in the six months of his representation, and further, that he had been instructed by counsel to invent information to proffer to the government. See Tr. of Appointment of Counsel Hr'g at 4-5.  Following a hearing on the matter, in which the Court acknowledged the mistrust and breakdown in communications between Martinez and his attorney, id., new counsel was appointed.

[11] See Doc. #493 (forwarding letter to counsel).

[12] Tr. of Hr'g of June 22, 2006, at 12.

[13] Id. at 24.

section 5K1.1 of the United States Sentencing Guidelines, no promise was made that this or any other departure would be granted, apart from those found in the plea agreement.[14]  Furthermore, the existence of an additional promise that the government would not seek enhancements for either of Martinez's prior convictions was inconsistent with his earlier representations to the Court.  During the change of plea proceeding, Martinez insisted that no promises other than those stated on the record and in the plea agreement had induced him to plead guilty.[15]  Moreover, the contention that such a promise existed, in light of the statements of Laguzzi and the Assistant U.S. Attorney to the contrary, is not credible.[16]  Therefore, the Court properly inquired as to the underlying basis for Martinez's motion and, finding the proffered basis unpersuasive, denied the motion accordingly.[17]

Further, the Court did not err in denying Martinez's motion to withdraw his guilty plea.  Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal."[18]  Before ruling on such a request, the Court is obliged to consider three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3)

---

[14] Id. at 15.

[15] Tr. of Change of Plea at 15.

[16] Tr. of  Hr'g of June 22, 2006, at 10, 15.

[17] See Fischetti v. Johnson, 384 F.3d 140, 145-46 (3d Cir. 2004) (finding the district court's decision to deny appointment of new counsel proper "if the court has 'made the appropriate inquiries and has determined that a continuance for substitution of counsel is not warranted'") (quoting United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982)); Welty, 674 F.2d at 188 (noting that substitution of counsel is warranted only if a defendant can show good cause, "such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney") ; see also United States v. Salemo, 61 F.3d 214, 219 (3d Cir. 1995) (holding that, in evaluating a pre-sentencing motion to remove counsel, the Court is obliged to conduct a similar inquiry, though it "need not be as exhaustive and searching" as a with a pre-trial motion).

[18] Fed. R. Crim. P. 11(d)(2)(B).

whether the government would be prejudiced by the withdrawal."[19]  Notably, "change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty."[20]  When asked why he wished to withdraw his guilty plea, Martinez did not assert his innocence, much less offer a compelling reason for the Court to disregard either his earlier comprehensive admission of guilt or its previous finding that Martinez was capable of entering an informed plea.  Instead, Martinez complained that he was facing too great a sentence and that he had been promised additional reductions.[21]  New-found fear of the punishment that he had acknowledged and accepted prior to pleading guilty provided an insufficiently strong reason to permit Martinez to withdraw his guilty plea.

On June 28, 2006, the Court sentenced Martinez to a 240 month term of imprisonment followed by a  ten-year period of supervised release.  As this sentence is below that advised by the Sentencing Guidelines, and in fact is equal to the mandatory minimum imposed by statute,[22] it is respectfully submitted that the Court of Appeals lacks jurisdiction to entertain Martinez's appeal of this sentence.  Martinez's plea agreement includes a voluntary waiver of his right to appeal or collaterally attack his conviction or sentence.   The agreement includes four exceptions: (1) the government files an appeal; (2) the sentence for any one count of conviction exceeds the statutory maximum; (3) the Court erroneously departs upward pursuant to the Sentencing Guidelines; or (4) the Court imposes an unreasonable sentence above the proper

---

[19] United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).

[20] United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001) (quoting United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992)).

[21] Tr. of H'rg of June 22, 2006, at 24.

[22] See 21 U.S.C. § 841(b)(1)(A).

Sentencing Guidelines range.  None of the foregoing exceptions applies to the instant case, and as

such, the Court of Appeals lacks jurisdiction to entertain Martinez's appeal.[23]

Nonetheless, the Court submits that its sentence is reasonable.  In framing its

sentence, the Court was necessarily informed by its calculation of the correct Sentencing Guidelines

range in this case.[24]  Martinez's total offense level is thirty-four, and his prior record places him

within Criminal History Category VI.[25]  The Guidelines sentencing range for a defendant with these

characteristics is 262 to 327 months in addition to ten or more years of supervised release and a

$10,000 to $4,000,000 fine.[26]  In addition to the advisory Sentencing Guidelines range, the Court

is also required to consider the factors set forth in the Federal Sentencing Statute.[27]  Applying these

---

[23] See United States v. Lockett, 406 F.3d 207, 214 (3d Cir. 2005); United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001).

[24] See United States v. Cooper, 437 F.3d 324, 325 (3d Cir. 2006) ("After Booker, 'the district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.'") (quoting United States v. Booker, 543 U.S. 220, 264 (2005)).

[25] At sentencing, Martinez raised two objections.  First, he argued that one of his prior drug felonies should not be considered when determining his career offender status because it occurred when he was young and involved only a few bags of contraband.  The Court overruled this objection, concluding that while the government had agreed to seek a lesser enhancement to the mandatory minimum sentence by including only one prior drug conviction in its amended information, that decision did not impact Martinez's status, under the Sentencing Guidelines, as a career offender. Second, Martinez argued that a prior retail theft conviction, for which he received no punishment aside from the payment of fines and costs, should not contribute points to his criminal history score under the Sentencing Guidelines.  The Court overruled this objection as well, noting that, as a practical matter, a one point reduction in Martinez's criminal history score would not affect his status as a career offender under the Sentencing Guidelines, nor would it impact the Sentencing Guideline calculation.

[26] Because Martinez does not have the resources to pay such a substantial fine, the fine was reduced to $1000.

[27] Cooper, 437 F.3d at 327. 18 U.S.C. § 3553(a) (2000), in pertinent part, instructs the Court to consider:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;

factors to the instant case, the Court opted to vary from the Guidelines and impose a lesser sentence.  Most notably, the Sentencing Guidelines range of 262 to 327 months over-represents the very limited role that Martinez played in the larger conspiracy to distribute heroin.  Martinez was never more than a street dealer and acted within the conspiracy for a limited period of approximately two months.  Nonetheless, as a consequence of his prior convictions and the limited value of the assistance he was capable of offering the government, the Court is required by statute to impose, at minimum, a 240-month term of imprisonment—a greater sentence than those received by other defendants more responsible for the creation and long-term operation of the drug ring.[28]

A 240-month sentence is more than sufficient to deter similar crimes, to promote respect for the law, to protect the public from the crimes that Martinez may commit in the future, and to provide Martinez—a recovering addict with limited education—with the treatment and vocational training he requires.[29]  For these reasons, the Court believes that its mandatory twenty-year sentence more than adequately supports the objectives of the Sentencing Reform Act.

Respectfully submitted,

**/s/ Cynthia M. Rufe**

Cynthia M. Rufe, J.

---

(4) the kinds of sentence and the sentencing range established for [the particular offense, according to the Sentencing Guidelines];
(5) any pertinent policy statement . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

[28] Ironically, because Martinez's involvement was so brief and so limited, his cooperation was not, in the government's view, so productive as to justify the same downward departure from the advisory guideline sentencing range, under U.S.S.G. § 5K1.1, for which several higher-ranking conspirators qualified.

[29] See § 3553(a)(2).