**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | : | |
| **WILLIAM MARTINEZ,** | : | |
| **Petitioner,** | : | |
| **v.** | : | **CRIMINAL NO. 05-CR-123-12** |
| | : | **CIVIL NO. 07-CV-4127** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | |
| | : | |

_____

## MEMORANDUM OPINION & ORDER

**RUFE, J.**                                                              **November 12, 2008**

Petitioner William Martinez ("Petitioner") pleaded guilty to a federal drug offense through a plea agreement that included a general waiver of his right to collaterally attack his sentence ("Plea Agreement"). After sentencing, Martinez filed a *pro se* petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, claiming, *inter alia*, that his counsel at sentencing had been ineffective ("petition").[1] The United States Government ("Government") responded by filing a motion to dismiss arguing that in the Plea Agreement Martinez waived his right to bring a petition on the grounds asserted.[2] Martinez, now acting through counsel appointed on his behalf, filed a comprehensive response.[3] The Court has carefully considered these filings, as well as the Plea Agreement and the transcripts of all relevant hearings, and the matter is now ready for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As a relatively minor member of a large drug organization based in Allentown, Pennsylvania, Petitioner acted as a street-level drug dealer from November to December, 2004,

---

[1] Doc. No. 658.

[2] Doc. No. 663.

[3] Doc. No. 687.

selling small packets of heroin to end-users to support his personal heroin addiction.[4]   Petitioner

was arrested and charged with conspiracy to distribute more than one kilogram of heroin in

violation of 21 U.S.C. §§ 846 and 841(a)(1).[5]   The Government subsequently filed an

Information charging Martinez with two prior felony drug convictions pursuant to 21 U.S.C. §

851(a).[6]   The effect of the Information was to expose Martinez to a statutory mandatory

minimum sentence of life imprisonment if he were found guilty at trial.

Petitioner entered into the Plea Agreement with the Government, dated February

10, 2006, in which he agreed to plead guilty to the conspiracy charge.   In return, the Government

promised to file an amended information pursuant to 21 U.S.C. § 851 that would include only

one of Petitioner's prior felony drug convictions.[7]   This would reduce the statutory minimum

sentence to which Petitioner was exposed from mandatory life to mandatory twenty years'

imprisonment.[8]

The Plea Agreement includes a provision whereby Petitioner waives his right to

appeal or collaterally attack his conviction and sentence in all but a few narrow circumstances.[9]

The provision states, in relevant part:

> In exchange for the undertakings made by the government in entering
> this plea agreement, the defendant voluntarily and expressly waives
> all rights to appeal or collaterally attack the defendant's conviction,

---

[4] See June 22, 2006 Hrg. on Mot. for New Counsel Tr. at 16-19 ("June 22, 2006 Hrg.").

[5] See Indictment [Doc. No. 32].

[6] Doc. Nos. 274 and 293.

[7] Gov't Ch. Plea Mem. at n.1 [Doc. No. 410].

[8] Plea Agreement ¶5 [Doc. No. 411].

[9] Id. ¶9.

sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

(a)     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

(b)     If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

(1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count . . . .

(2)     the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;

(3) the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.  If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.[10]

In addition, the Plea Agreement states that prior to signing it, Martinez fully discussed his options with his appointed counsel, Carina Laguzzi, Esquire, and also that Petitioner was satisfied with Laguzzi's services.[11]  Notably, the Plea Agreement also states, in one paragraph, "[n]o one has promised or guaranteed to the defendant what sentence the Court will impose,"[12]

_____

[10] Id. at ¶9.  As plainly appears, the waiver did not contain a carve-out provision preserving all constitutional claims.

[11] Id. at ¶10.

[12] Id. at ¶7.

and in another, "[i]t is agreed that the parties' . . . agreement contains no additional promises, agreements or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements or understandings will be entered into unless in writing and signed by all parties."[13]

The Court held a change-of-plea hearing on February 10, 2006, in which Martinez, Laguzzi, and Assistant United States Attorney John M. Gallagher participated.  The Court began by explaining to Martinez that any answers or statements he might make in the hearing must be truthful.[14]  Martinez stated that he understood.[15]  The Court also explained to Petitioner the charges against him,[16] and  Gallagher, at the Court's direction, recited the elements of the Plea Agreement.[17]  Specifically, Gallagher explained that the Government was agreeing to file an amended information referencing only one of Martinez's two previous felony drug offenses so as to reduce Martinez's mandatory minimum sentence from life to twenty years' imprisonment.[18]  Counsel also reported their informal understanding that the Government would be receptive to arguments that Martinez's remaining prior conviction should be ignored for sentencing purposes if Martinez, through Laguzzi, could unearth any reason why the conviction

---

[13] Id. at ¶11.

[14] Feb. 10, 2006 change of plea Hrg. Tr. at 3-4 ("Feb. 10, 2006 Hrg.").

[15] Feb. 10, 2006 Hrg. Tr. at 4.

[16] Id. at 9.

[17] Id. at 10-13.

[18] Id. at 10, 25.

should not qualify as a prior offense under 21 U.S.C. § 841.[19]  In that event, Martinez's

mandatory minimum sentence would be reduced to ten years.[20]  Laguzzi pledged to investigate

the matter further.[21]  Gallagher also noted for the record the Plea Agreement's "significant"

appellate waiver provision.[22]

       Martinez stated that he had read the Plea Agreement with his lawyer, that he had

no questions about it, and that he understood its terms.[23]  Martinez stated explicitly that he was

not relying on any promises outside of the Plea Agreement in making his decision to enter into

it.[24]

       Although the waiver terms appeared at length in the Plea Agreement, the Court

again explained to Petitioner that he was giving up the right to collaterally attack or appeal his

sentence except under limited circumstances, and endeavored to describe in some detail the

actual implications of the waiver.[25]  Martinez stated that he understood the appellate and

collateral attack waiver provision in the Plea Agreement,[26] and more particularly, that he

understood that the waiver would have the effect of preventing him from filing a habeas corpus

---

[19] Id. at 10, 13.

[20] Finding a way to invalidate the use of Petitioner's previous felony drug conviction would have had far-ranging consequences for Petitioner.  For example, in addition to lowering the mandatory minimum sentence to which he was exposed, invalidating his previous felony drug conviction would have precluded the Government from arguing that Petitioner was a Career Offender pursuant to Section 4B1.1 of the Federal Sentencing Guidelines which, inter alia, may have reduced his Criminal History Score from thirty-four to twenty-seven.

[21] Feb. 10, 2006 Hrg. Tr. at 13.

[22] Id. at 11.

[23] Id. at 15.

[24] Id.

[25] Id. at 19-21.

[26] Id. at 20.

petition with respect to his sentence.[27]   The Court explained that no particular sentence or

sentencing outcome was guaranteed Martinez,[28] and Martinez confirmed that he understood that

no particular sentence was "owed" to him, either through the Plea Agreement or otherwise.[29]   At

the conclusion of the hearing, Martinez again stated that no agreement other than that which had

been reviewed at the hearing had been entered into.[30]   The Court then expressly found that

Martinez's guilty plea was knowingly and voluntarily made, and that it was "not based on any

other promises, apart from those [in the Plea Agreement]," before accepting Martinez's change

of plea and the Plea Agreement.[31]

On June 5, 2006, the Office of Probation ("Probation") filed Martinez's Pre-

Sentencing Information Report ("PSR") with the Court.  The PSR is undisputed.  It reflects that

Martinez's Offense Level is thirty-four,[32] his Criminal History Category is six,[33] and his resulting

---

[27] Id. at 20-21.

[28] In the February 10, 2006 colloquy, the Court stated, "if you plead guilty, I will enter a judgment of guilty, and at a later time, sentence you on the basis of your guilty plea and in accordance with the sentencing statute . . . .  I can't even do that until I order a presentence report be prepared by the Department of Probation that will enable the Court to calculate the advisory sentencing guidelines, which I am bound to utilize, but not adopt in my sentence when I impose it, because it is advisory and not mandatory.  So, there is much for me to do and much for me to learn about you before you are sentenced, and I cannot predict today what my sentence will be . . . .  I also do not hear from the Government – and I don't see in your plea agreement – that the Government is agreeing to a specific sentence, and I don't see that they're recommending a specific sentence.  So, there is no way today or in the future that you would be able to withdraw your guilty plea, because a sentence was imposed that you thought you were owed, because no sentence is owed to you today; do you understand that?"  Martinez answered, "yes."  Id. at 21-22.

[29] Id. at 22.

[30] Id. at 30.

[31] Id. at 33.

[32] PSR at ¶20.  In calculating Martinez's advisory guidelines range (as opposed to his statutory mandatory minimum sentence), Probation noted that Petitioner had two previous felony convictions for possession with intent to distribute a controlled substance in violation of Title 35 Pennsylvania Consolidated Statutes Section 780-113(a)(30).  Id. at ¶¶6, 20.  See 35 PA. CONS. STAT. § 780-113(f) (2008) (characterizing this offense a felony).  In light of these two previous felony drug convictions, Probation classified Petitioner as a "Career Offender" pursuant to the United States Sentencing Guidelines Section 4B1.1.  PSR at ¶87.  As a result, Probation set Petitioner's initial Offense Level at thirty-seven.  Probation then subtracted three points for acceptance of responsibility and timely plea, arriving at a

advisory Guidelines range is 262-327 months' imprisonment.[34]

Soon thereafter, Martinez sent a letter to the Court dated June 8, 2006, in which he requested that new counsel be appointed for him to replace Laguzzi.[35]  The Court forwarded the letter to counsel, copying Martinez, on June 13, 2006.[36]  On June 22, 2006, the Court held a hearing on the matter.[37]  Martinez, Laguzzi and Gallagher participated. It was five days before Martinez's sentencing was to be held.

At the hearing, Martinez asked the Court to appoint new counsel for him and separately, for the first time, informed the Court that he wished to withdraw his guilty plea.[38]  He stated that he wanted new counsel and wished to withdraw his guilty plea because he believed Laguzzi had failed to fulfill a "promise" she had made to "knock out," or eliminate, the mandatory minimum twenty year sentence he faced.[39]  Martinez averred that he signed the Plea Agreement because of Laguzzi's promise to eliminate the mandatory minimum.[40]  However, Martinez also acknowledged that at the change of plea hearing he had sworn that he had not

---

final Offense Level of thirty-four.

[33] Probation noted that Petitioner has a Criminal History Category of six pursuant to U.S.S.G. Section 4B1.1.  PSR at ¶102.

[34] Id. at ¶134.

[35] See June 13, 2006 Letter of the Court to Martinez regarding forwarding correspondence received from him to counsel, Laguzzi.  [Doc. No. 493].

[36] Id.

[37] See June 22, 2006 Request for New Counsel Hrg. Tr. ("June 22, 2006 Hrg.") [ Doc. No. 514].

[38] See June 22, 2006 Hrg. Tr. at 11, 12, 24.

[39] See, id. at 11.   Martinez also stated that Laguzzi had promised him unspecified "other things" that she had failed to deliver, and that he did not trust Laguzzi.  Id. at 8.

[40] Id. at 11.

received any promises outside of those reflected in the Plea Agreement.[41]  The Court likewise

noted that Martinez had repeatedly averred at the prior hearing that he was not acting on any such

extrinsic promises.[42]

        Counsel reported to the Court about Laguzzi's persistent efforts on Martinez's

behalf to convince the Government to withdraw the Information charging Martinez's prior drug

felony and thus eliminate the mandatory minimum sentence at issue, or alternatively to move for

a downward departure that would afford Martinez some penalty reduction.[43]  Further, Laguzzi

stated, "what I did promise [Martinez] was that I would . . . fight for him to try and get the

downward departure.  I never promised him that I was going to be able to do it."[44]

        The Court ultimately found that Martinez did not enter the Plea Agreement on the

basis of any extrinsic promise.[45]  It noted that it had made the exact same finding at the change of

plea hearing in February, 2006.[46]  It also found that Laguzzi had not "done anything

inappropriate" in her unsuccessful efforts to obtain a reduced sentence for Martinez.[47]  The Court

therefore rejected Martinez's request for new counsel and his motion to withdraw his guilty plea,

each of which was premised on claims of Laguzzi's failure to deliver on an extrinsic promise to

---

[41] Id. at 6, 7.

[42] Id. at 11-13.

[43] June 22, 2006 Hrg. Tr. at 13-15, 17-18.

[44] Id. at 15.

[45] Id. at 25.

[46] Id. at 23.  To this point, the Court stated, at the June 22, 2006, hearing, "the day I took your guilty plea . . . I know what questions I asked you and I know what you answered.  And I found that you knew what you were doing at that time and it wasn't based on a promise."  Id.

[47] Id.

reduce his sentence.

On June 27, 2006, the Court sentenced Petitioner.  Laguzzi made several arguments for a reduction in Guidelines range, but conceded that the arguments were "academic" because of the statutory mandatory minimum applicable to Martinez.[48]  After conducting the requisite sentencing analysis, the Court imposed the statutory mandatory minimum twenty-year sentence, which represented a variance downward from the advisory Guidelines range.[49]

On June 30, 2006, Petitioner appealed his sentence.[50]  On September 15, 2006, the Third Circuit Court of Appeals enforced the appellate waiver in the Plea Agreement and dismissed the appeal.[51]  Petitioner did not file a petition for a writ of certiorari.

On November 2, 2007, Petitioner filed the instant *pro se* habeas corpus petition to vacate or correct his sentence pursuant to 28 U.S.C. § 2255.[52]  The Petition presents claims of ineffective assistance of counsel, in particular, as the Court understands it, that Laguzzi: (1) failed to challenge the charged drug quantity; (2) failed to challenge the use of his prior drug felony convictions as the basis of establishing career offender status; (3) failed to file a brief on the merits of his appeal; (4) failed to advise Petitioner of various appellate rights; and (5) failed to assist Petitioner in the appellate process.[53]

---

[48] June 27, 2006 Sent. Hrg. Tr. at 8-9, 11 ("June 27, 2006 Hrg.).

[49] Id. at 33.

[50] Doc. No. 529.

[51] See Doc. No. 594.

[52] See Doc. No. 658.  Martinez's first attempt to file a petition under § 2255, filed on October 2, 2007, was dismissed on procedural grounds without prejudice and with express leave to re-file.  See Doc. Nos. 645 and 648. The November 2, 2007 Petition followed.  It does not challenge Martinez's conviction.

[53] See Pet. ¶12.  This summary reflects the Court's interpretation of the claims listed in the Petition.

On November 15, 2007, the Government moved to dismiss the Petition.  Relying primarily on United States v. Khattak,[54] the Government argues that enforcing the terms of the Plea Agreement's collateral attack waiver is proper in this case, and would not work a miscarriage of justice.[55]  The Government contends Petitioner's claims of ineffective assistance of counsel are "gratuitous" and frivolous, are "routine claim[s] for collateral relief . . . foreclosed by the plea agreement,"[56] and that Martinez's claims are not directly related to his attorney's conduct during the negotiation of the Plea Agreement, such that enforcing the waiver to dismiss the petition is fair.[57]

Martinez had previously moved for the appointment of counsel on his behalf for purposes of post-sentencing litigation.[58]  On November 29, 2007, after considering the Petition and the Government's motion to dismiss, the Court ordered the appointment of a Criminal Justice Act Panel attorney on Martinez's behalf.[59]  In the same period, Martinez, acting *pro se*, filed a Response to the Motion.[60]  For reasons unrelated to Martinez' case, the Court replaced Martinez's CJA Panel attorney on February 26, 2008, and granted him leave to file an amended

---

[54] 273 F.3d 557 (3d Cir. 2001).

[55] Mot. Dism. at 6.

[56] Id. at 7.

[57] Id. at 8 (asserting Petitioner is "wav[ing] various gratuitous claims of ineffectiveness of counsel as if it [sic] were a magic wand capable of nullifying the agreement he made and from which he benefitted").

[58] Doc. No. 646.

[59] Doc. No. 665.

[60] Doc. No. 667.

response to the Government's Motion.[61]  After an extended response period,[62] Martinez filed a

counseled Amended Response on April 25, 2008.[63]

Reading Martinez's Petition in concert with the arguments contained in his

Amended Response, it appears that the bases for his claim for relief fall into two categories.  The

first is that prior counsel Laguzzi ineffectively counseled him by failing to satisfactorily represent

his interests after sentencing by, *inter alia*, failing to appeal as directed.  The second is that

Laguzzi ineffectively represented Martinez's interests during the negotiation of his Plea

Agreement by deceiving him into believing that a ten-year minimum would apply, and also by

failing to challenge various factors considered by Probation in calculating his Guidelines

sentence range.  Relying on the Third Circuit's recent decision in United States v. Shedrick,[64]

Martinez argues that enforcement of the collateral attack waiver in the Plea Agreement would

effect a miscarriage of justice because he has alleged ineffectiveness of counsel in the negotiation

of the agreement.[65]  This ineffective assistance claim is not precluded by the waiver in the Plea

Agreement, Martinez argues, because if true, it renders his acceptance of the Plea Agreement

unknowing and involuntary.  Thus, he claims, the waiver is an insufficient basis for the dismissal

of the Petition.  The Motion and Response are addressed below.

---

[61] See Doc. Nos. 682, 684.

[62] Doc. No. 686.

[63] Doc. No. 687.

[64] 493 F.3d 292 (3d Cir. 2007).

[65] Resp. at 3.

## II. DISCUSSION

As a threshold matter, this Court has jurisdiction over Martinez's Petition.[66]  The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year statute of limitations on habeas corpus petitions brought under § 2255 which begins to run from the latest of "the date on which the judgment of conviction becomes final" and a number of other occurrences not relevant to this case.[67]   For purposes of a federal habeas petitioner, a conviction becomes final after the time allotted for direct appeal expires.[68]   In a criminal case, a defendant may appeal from the district court's judgment within ten days of entry of judgment.[69]   If a timely appeal has been taken to the appropriate circuit court, a defendant may file a petition for a writ of certiorari with the United States Supreme Court within ninety days of circuit court's denial of his appeal.[70]

In this case, the Court entered judgment as to Martinez's sentence on June 29, 2006.  On June 30, 2006, Petitioner filed a notice of appeal.  On September 15, 2006, the Third Circuit enforced Petitioner's appellate waiver and dismissed his appeal.  Petitioner did not file a petition for a writ of certiorari.  As a result, Petitioner's conviction became final on December 14, 2006, ninety days after the Third Circuit dismissed his appeal.  Thus, Mr. Martinez's petition – filed on October 24, 2007 – is not barred by the one year statute of limitations, and this Court has jurisdiction.

---

[66] The Government may be understood to suggest otherwise in its Motion.  See Mot. Dism. at n.1.

[67] 28 U.S.C. § 2255(f) (2006).

[68] Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).

[69] FED. R. APP. P. 4(b)(1)(A)(I).

[70] SUP. CT. R. 13(1).

### A.    Applicable Law

In general, waivers of appeal and collateral attack rights are enforceable in the Third Circuit.[71]  However, district courts should refuse to enforce such waivers where the defendant did not enter into the waiver knowingly and voluntarily, or where enforcement of the waiver would work a "miscarriage of justice."[72]  The Third Circuit has explored the contours of these rules in the past several years.

In United States v. Shedrick, the Third Circuit considered an appeal of a petitioner under 28 U.S.C. § 2255 claiming that a collateral attack waiver in the plea agreement he had signed was unenforceable because his lawyer had provided constitutionally deficient counsel during the negotiation of the agreement and the statutory appeal period following sentencing.[73]  Petitioner-appellant Shedrick argued that enforcing the waiver would work a miscarriage of justice because his counsel's failure to timely file a direct appeal precluded him from making an argument that he had explicitly reserved to himself in his plea agreement.[74]  Shedrick also argued

---

[71] See United States v. Mabry, --- F.3d ----, 2008 WL 2875346, at *10 (3d Cir. July 28, 2008) (enforcing a petitioner's waiver of appellate and collateral attack rights).

[72] Id. at *3.

[73] 493 F. 3d 292, 295 (3d Cir. 2007).  In the underlying trial, Shedrick pleaded guilty, via a plea agreement, to a felony gun possession charge.  Through the plea agreement, Shedrick waived his rights to appeal and collaterally attack his sentence and conviction unless the Government appealed, his sentence exceeded the statutory maximum, or the trial judge erroneously departed upward from the applicable Guidelines range.  Id. at 295.  At sentencing, the district court departed upwards eight levels from Shedrick's Guidelines range based on evidence that Shedrick had discharged a weapon during the commission of the offense.  Id. at 297.  After Shedrick's trial, counsel failed to timely file an appeal, and the district court appointed him new counsel who did so, albeit late.  Shedrick's subsequent appeal was dismissed as untimely, and Shedrick filed a counseled petition for habeas corpus pursuant to 28 U.S.C. § 2255.  After the district court denied his petition, Shedrick, acting pro se, appealed the denial to the Third Circuit, which granted a limited certificate of appealability on questions related to the alleged ineffectiveness of Shedrick's counsel during plea negotiations, sentencing and the subsequent statutory appeal period.  Id.

[74] Id. at 297.

that his lawyer prevented him from fully understanding his plea by failing to advise him of the potential that, at sentencing, the district court could depart upwards from the advisory Guidelines range calculated in his presentence investigation report.[75]

The Third Circuit first considered whether the waiver should be enforced, precluding a merits review.  The court refused to uphold the waiver, reasoning that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [petitioner] from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice."[76]  Having thus established that the waiver did not bar Shedrick's petition, the court went on to consider the merits of his various claims of ineffective assistance of counsel.[77]

In United States v. Mabry, the Third Circuit again took up the issue of the enforceability of collateral attack waivers.[78]  At trial, Petitioner Mabry pleaded guilty to one count of possession with intent to distribute cocaine.[79]  Pursuant to a plea agreement, Mabry waived his right "to appeal any conviction and sentence, including a sentence imposed within the mandatory minimum, on any and all grounds set forth in [18 U.S.C. § 3742] or any other grounds, constitutional or non-constitutional" as well as his right "to challenge any conviction or

---

[75] Id. at 298.

[76] Id.

[77] Id. at 298-302.

[78] 2008 WL 2875346, at *4-*6.

[79] Id. at *1.

sentence or the manner in which the sentence was determined in any collateral proceeding."[80]
The district court accepted Mabry's guilty plea and sentenced him within the advisory Guidelines
range.[81]  It did not conduct an evaluation on the record of the agreement's terms with respect to
collateral and appellate waiver, nor did Mabry's change-of-plea colloquy touch on these points.

Subsequently, Mabry filed a *pro se* petition to vacate his sentence pursuant to 28
U.S.C. § 2255, arguing that his counsel was ineffective for failing to file an appeal as directed on
four issues related to Guidelines calculations.  Mabry claimed that to uphold the collateral attack
waiver in the face of this allegedly deficient lawyering would result in a miscarriage of justice.
The district court disagreed and dismissed the petition, ruling that the issues Mabry asked his
counsel to raise on appeal were insubstantial and that it was therefore proper to enforce the
waiver.[82]  On appeal from the dismissal, Mabry broadened his argument to include a claim that
he did not enter into his waiver provision knowingly and voluntarily.  He did not, however, argue
that "he was misled in any way into pleading guilty or agreeing to the waiver."[83]

Considering Mabry's appeal, the Third Circuit first ruled that the district court had
failed to properly conduct a inquiry into the waiver during Mabry's change-of-plea colloquy,
noting that district courts have "an independent obligation to conduct an evaluation of the
validity of a collateral waiver."[84]  The court then considered Mabry's argument as to why the

---

[80] Id.

[81] Id. at *2.

[82] Id. at *3.

[83] Id.

[84] Id. at *4.

waiver should not apply.  It held that Mabry had entered into the waiver knowingly and voluntarily, basing this ruling on findings that the district court had informed Mabry of the terms of the waiver, determined that Mabry understood the rights he was purporting to waive, assured itself that Mabry had not been coerced or misled in any way into entering into the agreement, explained the waiver to Mabry at great length, and allowed the prosecution and defense counsel to review the plea agreement with Mabry in open court.[85]

The Third Circuit also rejected Mabry's argument that enforcing the waiver despite his counsel's failure to appeal as directed would work a miscarriage of justice,[86] holding it proper to enforce the waiver because there existed no non-frivolous grounds for the appeal Mabry desired.[87]  These grounds were, the court determined, either insubstantial or clearly barred by the broad appellate waiver provision in the plea agreement, no exception of which applied.[88] Importantly, the court stated repeatedly that this was not a "case raising allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver."[89] In such a case, it may be proper to "remand for a hearing and permit the [d]istrict [c]ourt to consider the issue in the first instance."[90]

---

[85] Id. at *5.

[86] Id. at *6-*8.

[87] Id. at *10 (distinguishing Roe v. Flores-Ortega, 528 U.S. 470 (2000), which held that a presumption of prejudice arises from a lawyer's failure to appeal as directed from a criminal conviction and sentence, by noting that "in the context of an appellate waiver" there is no "presumption of prejudice" stemming from counsel's failure to appeal).

[88] Id at *10.

[89] Id. at *9.

[90] Id. at n.7.

B.   **Application Of Law To Martinez's Arguments**

1.   <u>Knowing and Voluntary</u>

Here, Martinez knowingly and voluntarily waived his right to appeal and to collaterally attack his sentence.  To determine whether such a waiver was knowing and voluntary, the Court must analyze the context of "what occurred and what the defendant contends" by, at a minimum, "review[ing] the terms of the plea agreement and change-of-plea colloquy and addressing their sufficiency."[91]

Martinez contends that Laguzzi's alleged promises caused him to unknowingly and involuntarily enter into the Plea Agreement.  This contention is not supported, and indeed, is roundly contradicted by the record.  Like the district court in <u>Mabry</u>, this Court described the terms of the Plea Agreement, and in particular, the waiver at issue, to Martinez at his change-of-plea hearing, and verified that he understood them.[92]  The Court also went to great lengths to satisfy itself that Petitioner had not been promised anything outside the terms of the Plea Agreement, or otherwise misled or coerced into signing it.[93]  Moreover, counsel reviewed the terms of the Plea Agreement with Martinez in open court.[94]  Considering <u>Mabry</u>, the Court thus finds that no unfulfilled or extrinsic promises were made to Martinez, and that any misunderstanding he might have harbored regarding the precise nature of the Plea Agreement was obviated by the Court during its careful change-of-plea colloquy with him and counsel.  In

---

[91] <u>Mabry</u>, 2008 WL 2875346, at *4.

[92] <u>See</u> Feb. 10, 2006 Hrg. Tr. at 19-21.

[93] <u>See id.</u> at 15, 30.

[94] <u>See id.</u> at 9-13.

sum, this Court fully explained the scope and nature of Martinez's Plea Agreement to him prior to accepting his guilty plea.  It reviewed with him the terms and implications of the agreement's appellate and collateral attack waiver provisions.  Martinez repeatedly confirmed that he understood the agreement's terms and import. The Court can find no support in the record for Martinez's argument that he did not knowingly and voluntarily enter into the Plea Agreement.

>    2.    Miscarriage of Justice

Unlike other circuits, the Third Circuit has declined to delineate a clear list of situations that constitute a miscarriage of justice in the appellate and collateral attack waiver context.[95]  Instead, the Third Circuit takes a "common-sense approach" to the question, based on the following factors: "clarity of the error;  its gravity;  its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum);  the impact of the error on the defendant;  the impact of correcting the error on the government;  and, the extent to which the defendant has acquiesced in the result."[96]  Here, enforcing Martinez's waiver will not work a miscarriage of justice because the waiver provision does not allow him to appeal on the grounds he proposes and because he has not alleged a potentially viable claim of ineffective representation during the plea negotiation.

>    **a.    Ineffectiveness in Plea Negotiations**

Enforcing Petitioner's waiver as to his allegations of constitutionally deficient representation during the plea negotiations will not work a miscarriage of justice.  As a general

---

[95] Mabry, 2008 WL 2875346, at *9.

[96] Id. (citation omitted).

proposition, and in keeping with the Third Circuit's "common sense" approach to such questions, enforcing waiver provisions over assertions of ineffective representation which are squarely contradicted by the record does not rise to the level of a miscarriage of justice. This rule applies in this case.[97]

Martinez argues Laguzzi was ineffective during the plea negotiation because she allegedly promised that she would somehow obtain a ten year sentence for him, which falsehood induced him into signing the agreement. Although Martinez claims – like the petitioner in Shedrick – that his lawyer deceived him during plea negotiations, unlike the circumstances of Shedrick, Martinez's arguments are not before the Court for the first time.

A review of colloquies held on Martinez's various pre-sentencing motions and requests reveals as much. For example, at the June 22, 2006 hearing on Martinez's request for appointment of new counsel, Petitioner claimed Laguzzi had reneged on her promise to "knock out" the mandatory twenty-year minimum sentence he faced.[98] The Court rejected Martinez's claim at that time, and explicitly held, on the record, that it did not perceive that Laguzzi had made any such promise outside of the plea agreement.[99] It also confirmed with Martinez that "when you reviewed the terms of your plea agreement [at the February 10, 2006 colloquy] with this Court there were no promises from anyone, not the Government, not Ms. Laguzzi, not the

---

[97] See Mabry, 2008 WL 2875346, at *9 (finding no miscarriage of justice where defendant's ineffective assistance allegations were refuted by record); see also Quiles-Gonzales v. United States, Civ. No. 07-1797, 2007 WL 2407288, at *3 (E.D. Pa. Aug. 20, 2007)("Essentially then, [Shedrick] held that a collateral-attack waiver should not be enforced if a habeas petitioner has alleged *potentially viable* ineffective-assistance-of-counsel claims, since refusing to consider and remedy such claims, if true, would result in a miscarriage of justice.")(emphasis added).

[98] June 22, 2006 Hrg. Tr. at 5.

[99] Id. at 22-23.

Court, that you would get a downward departure, and you pleaded guilty anyway."[100]  At the February 10, 2006 colloquy, the Court explicitly reviewed the terms and import of the waiver at issue with Martinez before accepting his averment that he understood and agreed to it.[101]  The Court also expressly confirmed that Martinez understood that he would not be able to withdraw his guilty plea in the future if he did not receive a particular sentence, "because no sentence is owed to you."[102]  Thus, the Court denied Martinez's request for new counsel and to withdraw his guilty plea.  Given these previous findings and rulings, the Court finds that enforcement of Martinez's collateral attack waiver over his claims of misleading attorney conduct during plea negotiations would not work a miscarriage of justice because it has already evaluated these selfsame claims and found them to be without merit.

For a similar reason, Martinez's case does not fall under the potential carve-out described in Mabry for "case[s] raising allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver,"[103] which, when applicable, may call for "a hearing [to] permit the [d]istrict [c]ourt to consider the issue in the first instance" before an appellate or collateral attack waiver may be enforced.[104]  Martinez's claim certainly means to describe ineffectiveness by Laguzzi in the plea negotiation.  However, as noted above, the Court has already heard, assessed and rejected on the record the precise allegations of

---

[100] Id. at 7.

[101] Feb. 10, 2006 Hrg. Tr. 19-21.

[102] Id. at 22.

[103] Mabry, 2008 WL 2875346, at *9.

[104] Id. at n.7 (noting that the Third Circuit defines "miscarriage of justice" in common-sense terms).

ineffectiveness raised now, again, by Martinez.  Thus, unlike the scenario described in <u>Mabry</u>, Martinez has not articulated a "potentially viable" claim of ineffective assistance of counsel through misleading or deceptive attorney conduct, and no miscarriage of justice would result from enforcing his collateral attack waiver over such claims.

### b.      Failure to File Appeal

Generally, there will be no miscarriage of justice from enforcing a waiver of collateral attack or appeal rights where a petitioner "has not identified any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack in his petition."[105]  In light of this rule, enforcing Martinez's collateral attack waiver as to his ineffective assistance claims arising from Laguzzi's failure to file an appeal, challenge certain findings or calculations in the presentence report, or otherwise represent his interests will not work a miscarriage of justice.

Martinez does not specify the grounds on which he urged Laguzzi to file an appeal on his behalf.  From his filings, however, it appears that Petitioner believes his appellate issues to be (1) faulty drug quantity calculations in the presentence report; (2) improper characterization as a Career Offender; and (3) improper reliance on his felony drug record for purposes of the mandatory minimum.[106]  Like the petitioner in <u>Mabry</u>, Martinez explicitly waived his right to appeal his sentence in all but a few narrow circumstances.  Indeed, pursuant to Petitioner's waiver he may appeal only if the government appeals or if the trial court erroneously or unreasonably sentences him above the statutory maximum or Guidelines range.  In this case,

---

[105] <u>Id.</u> at *9.

[106] <u>See</u> Pet. ¶12A; Resp. at 5.

however, it is indisputable that none of these exceptions apply.  Martinez was sentenced at the statutory mandatory minimum penalty, which was below his advisory Guidelines range, and the Government has not appealed.[107]  Unlike the waiver in <u>Shedrick</u>, Martinez's waiver does not reserve to him the right to file an appeal upon any of the issues he has submitted.  Moreover, despite the waiver terms in the Plea Agreement, Martinez has already appealed his sentence to the Third Circuit Court of Appeals, which enforced the appellate waiver and dismissed the appeal.  No miscarriage of justice will result from enforcing Martinez's collateral attack waiver as to his claims regarding Laguzzi's failure to file an appeal, because, as in <u>Mabry</u>, no non-frivolous ground for appeal, not covered by the appellate waiver, exists in this action.

### III.  CONCLUSION

For the reasons set forth above, the Court will enforce Petitioner's collateral attack waiver and grant the Government's Motion to dismiss his petition.  Additionally, the Court finds that Martinez's petition does not raise any substantial issue of law, and that there is no probable cause for the issuance of a certificate of appealability.[108]  An appropriate Order follows.

---

[107] As previously noted, in breach of the plain terms of the Plea Agreement, Martinez filed a *pro se* direct appeal of his sentence shortly after it was imposed.  The Third Circuit Court of Appeals dismissed the appeal as barred by the appellate waiver in the Plea Agreement.  Because it is not clear to this Court that the dismissal of Martinez's appeal renders the present portion of the analysis moot, the Court will consider in full the viability of Martinez's arguments related to failure to appeal, under <u>Mabry</u> and <u>Shedrick</u>.

[108] A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Martinez has not met his burden here.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

——————————————————— :
                                              :
**WILLIAM MARTINEZ,**                         :
                    **Petitioner,**           :
          **v.**                              :        **CRIMINAL NO. 05-CR-123-12**
                                              :        **CIVIL NO. 07-CV-4127**
**UNITED STATES OF AMERICA,**                 :
                    **Respondent.**           :
——————————————————— :

## <u>ORDER</u>

   **AND NOW**, this 12th day of November 2008, upon consideration of the Petition

filed in the above captioned action pursuant to 28 U.S.C. § 2255, the Government's Motion to

Dismiss [Doc. No. 663], and the Response [Doc. No. 687], it is hereby **ORDERED** as follows:

   1.  The Government's Motion is **GRANTED**;

   2.  Petitioner William Martinez's Petition is **DENIED**;

   3.  There is no probable cause to issue a certificate of appealability.

The Clerk of Court is DIRECTED to CLOSE this case.

   It is so **ORDERED**.

           **BY THE COURT:**

           /s/ Cynthia M. Rufe

           ———————————————

           **CYNTHIA M. RUFE, J.**